UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN HENRY GUNN, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 15-0418-CV-W-FJG-P ) |
| JAY CASSADY, | ) ) |
| Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Jefferson City Correctional Center in Jefferson City, Missouri, has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2011 convictions and sentences for second-degree burglary and first-degree burglary, which were entered in the Circuit Court of Boone County, Missouri, after a jury trial. Petitioner's motion for post-conviction relief filed pursuant to Missouri Supreme Court Rule 29.15 was denied after an evidentiary hearing (Doc. 10-6 at 139), and that denial was affirmed on appeal (Doc. 10-10).

**Statement of Facts**

In affirming the denial of post-conviction relief, the Missouri Court of Appeals, Western District, set forth the following facts:

> In March 2010, Gunn lived in Columbia with his son, Kyle Gunn ("Kyle"); his niece, Stacey Moorehead; Moorehead's fiancé, Zachary Davis, and Gunn's daughters. Gunn and a relative, Shannon Gunn ("Shannon"), devised a plan to burglarize Hardt's Used Furniture, where Shannon had previously worked. Gunn then approached Davis with the idea of burglarizing the store. Gunn told Davis that the furniture store had a giant jar with change, some cash, and a gun, and that he was specifically interested in obtaining the gun. Davis, however, told Gunn that he could not burglarize the store.

Gunn also approached Kyle with the idea of burglarizing the furniture store. Gunn asked Kyle to commit the burglary, and he told Kyle that he wanted the gun that the store's owner kept in the store. Gunn told Kyle that it would be a safe plan and that Shannon knew where everything was in the building, so the burglary would go smoothly. Gunn put Kyle in contact with Shannon, and Kyle agreed to commit the burglary.

Shannon met Gunn, Kyle, and Kyle's friend, Diego Camargo, at Gunn's house, and the four men planned the burglary. On the night of March 4, 2010, Shannon, Diego, and Kyle drove to the furniture store. Kyle and Camargo broke into the store, took the gun and miscellaneous other items, and left. Kyle, Shannon, and Camargo returned to Gunn's house. Gunn was in Brunswick at the time of the burglary. Before the burglary, Gunn had instructed Kyle to place the gun in Gunn's room. After dividing the items taken from the store, Kyle put the gun in Gunn's room.

After learning that the gun taken during the burglary was not a real gun, Gunn told Davis that Davis needed to come up with money or Davis and Moorehead would have to move out of Gunn's house. Davis and Moorehead had no other place to live. Gunn put pressure on Davis to commit a robbery, and he suggested that Davis rob a Super 8 Motel. Gunn gave Davis the gun from the furniture store burglary and told Davis how to commit a robbery. On March 8, 2010, Camargo drove Davis to Rangeline Liquor, and Davis used Gunn's gun to rob the store. After robbing the store, Camargo and Davis returned to Gunn's house and gave Gunn most of the money they obtained from the robbery. Kyle and Davis were arrested shortly thereafter and implicated Gunn in the crimes.

The State subsequently charged Gunn with one count of second-degree burglary and one count of first-degree robbery. A jury found him guilty of both charges, and the court sentenced him to ten years in prison on each count, to be served consecutively. We upheld his convictions and sentences on direct appeal in a memorandum and per curiam order. *State v. Gunn*, 392 S.W.3d 575 (Mo. App. 2013).

Gunn filed a *pro se* motion for post-conviction relief, which was later amended by appointed counsel. While the case was pending, Gunn filed two *pro se* motions to disqualify the judge. In those motions, Gunn alleged that Judge Crane should be disqualified because he would be called as a material and hostile witness during the evidentiary hearing. Gunn also filed two *pro se* motions for appointment of alternative counsel in which he alleged that he was entitled to new, private counsel because his post-conviction counsel worked out of the same office as his direct appeal counsel.

At the start of the evidentiary hearing, Gunn told the court that he wanted to make a statement on the record. In his statement, Gunn demanded that certain witnesses be called to testify to show that he was "downright framed by

2

> Prosecutor Hicks and . . . Judge Kevin Crane knew about this." Gunn stated that Kyle would testify that the prosecutor told him what to say on the stand. Also, Gunn said that Davis did not want to testify at trial and "stated on the record" that the prosecutor came to the jail and told him what to say on the stand, because Davis "knew nothing about the case." Gunn stated that Moorehead was willing to testify now that she lied at trial because of her boyfriend, Davis. Gunn told the court, "I want this made a record to show that I have repeatedly told my [post-conviction] lawyer to get these witnesses, and she has abandoned me. . . . This hearing is nothing but a farce and a scam to protect the state agencies from framing me."
>
> Gunn demanded that Judge Crane recuse himself and that a new judge and a new lawyer be assigned to his case. Judge Crane denied Gunn's motions to recuse himself and to appoint new post-conviction counsel. Gunn's post-conviction counsel then offered testimony from Gunn's trial counsel, appellate counsel, and Gunn. During Gunn's testimony, his post-conviction counsel offered, and the court received, letters from Kyle and Davis in which they recanted their statements implicating Gunn and indicated that the prosecutor had coached them on what to say. The court denied Gunn's amended Rule 29.15 motion. Gunn appeals.

Doc. 10-10 at 3-6 (footnote omitted).

## Standard

In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. 1983) (en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing

3

evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Here, because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**Discussion**

Petitioner raises the following grounds for relief: (1) state officials acting with the public defender subjected him to a trial without due process by knowingly using "what it knew was false evidence material in every word, then set out to destroy the ability to this claim," and that at the post-conviction relief hearing, the prosecutor, judge, and public defender conspired to prevent Petitioner from proving that claim; (2) trial counsel was ineffective for failing to object to inadmissible and prejudicial testimony and for eliciting prejudicial testimony from a witness; (3) the post-conviction judge was a material witness to perjury, and the public defender was acting in conflict of interest; (4) the trial court plainly erred in failing to intervene in the state's closing arguments when the state argued that there were no inconsistencies/inconsistent statements in the videotaped interviews of two witnesses; (5) Petitioner is actually innocent, and the state's witnesses all recanted and made it clear the prosecutor coached them into lying and that the public defender, prosecutor, and judge acted in conspiracy in numerous ways; (6) "dozens of pro se claims" could have been raised but for the conspiracy.

---

[1] That provision states:

In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

4

*Ground 1: False Evidence and Conspiracy*

As to the first claim, that there was a conspiracy to use false evidence at trial and a conspiracy to prevent a post-conviction hearing on that matter, the crux of Petitioner's contention appears to be that the state "paid for statements" and guided already-interrogated individuals into changing their statements. Doc. 47 at 2-3. However, the Missouri Court of Appeals carefully reviewed these arguments and the motion court's rulings and found no error. Notably, the Missouri Court of Appeals stated as follows:

> In its judgment denying all of Gunn's Rule 29.15 claims, the motion court concluded that Gunn presented no evidence establishing that the prosecutor committed any misconduct. The court further found that, because Gunn did not produce the testimony of Kyle or Davis, there was no evidence to support his claim that they would have testified that the prosecutor coached them on what to say or that they lied on the stand.

A review of the argument and record indicates no error. To the extent Petitioner now seeks to introduce new evidence supporting that claim, this Court cannot consider that evidence. "State-court decisions are measured against [the Supreme Court's] precedents as 'of the time the state renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011). More to the point, "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and if a claim "has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*

In short, because the state court's determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § § 2254(d)(1) and (2), Ground 1 is denied.

5

*Ground 2: Ineffective Assistance of Counsel*

In his second ground, Petitioner contends that trial counsel was ineffective for failing to object to inadmissible and prejudicial testimony and for eliciting prejudicial testimony from a witness. Specifically, Petitioner argues (a) that trial counsel should have objected to Kyle Gunn's testimony "concerning possession of a stolen gun in the charged burglary," and (b) that counsel elicited testimony from Davis about Petitioner's supplying and using drugs. Doc. 1 at 6. Additionally, in his reply to Respondent's response, Petitioner makes the related argument that (c) the gun should have been entered into evidence and linked to Petitioner. Doc. 47 at 3-4.

Although Petitioner raised the claim concerning possession of a stolen gun in the charged burglary and the claim concerning testimony about Petitioner supplying and using drugs to the motion court, Petitioner failed to raise these claims on post-conviction appeal. *See* Doc. 49-1. Additionally, Petitioner's claim that the gun should have been entered into evidence and linked to Petitioner appears to be raised for the first time to this Court and at very least was not raised on appeal from Petitioner's claims in the motion court. *See id.*

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F3d 1371, 1381 (8th Cir. 1995). Where a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default. *Id.* "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Key to this case, claims that are not raised in post-conviction appeal are defaulted. *Sweet v. Delo*, 125 F.3d 1144, 150 (8th Cir. 1997) (citing *Reece*

6

*v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996) (holding that failure to raise claim in post-conviction appeal is considered abandonment of claim).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Petitioner failed to demonstrate cause for his default. *See* Doc. 47 at 3-5. Petitioner also failed to show that a fundamental miscarriage of justice will occur if the Court declines to consider the merits of his defaulted claims. *See id.*

Accordingly, Ground 2 is denied.

***Ground 3: Recusal of Rule 29.15 Judge.***

In his third ground, Petitioner argues that the post-conviction judge was a material witness to perjury. In this ground, Petitioner repeats claims that the public defender conspired with the prosecutor and judge so as not to call witnesses that would implicate the judge and the prosecutor in the "knowing use of material perjury." Doc. 1 at 8.

To the extent Petitioner contends his custody is unlawful because the Rule 29.15 judge was biased, the Court notes that a claimed defect in post-conviction proceedings fails to state a cognizable federal ground under 28 U.S.C. § 2254. *Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007). Additionally, as noted above, the Missouri Court of Appeals affirmed the motion court's ruling that Petitioner presented no evidence establishing prosecutorial misconduct and that Petitioner failed to produce evidence to support his claim that Kyle and Davis lied. Doc. 10-10 at 6. Further, the Missouri appellate court examined at length whether Judge Crane should have recused himself because he was a material witness to the claims of prosecutorial misconduct. To that end, the court determined:

7

> All of Gunn's allegations in the amended motion regarding Judge Crane's proposed testimony were conclusory. For example, Gunn alleged that his trial counsel knowingly assisted Judge Crane and the prosecutor in using fabricated evidence, that Judge Crane knew his conviction was based on fabricated evidence, and that Judge Crane was fully aware of the prosecutor's coaching witnesses and did not put it on the record. None of these accusations were supported by specific factual allegations in the motion or evidence at the hearing, however. "The purpose of an evidentiary hearing is not to provide movant with an opportunity to produce facts not alleged in the motion. Rather, the purpose is to determine if the facts alleged in the motion are true." *White v. State*, 939 S.W.2d 887, 904 (Mo. banc 1997).
>
> Furthermore, although Gunn argues that Judge Crane should have recused himself because he was a material witness to the prosecutor's "outrageous misconduct," he has failed to show that Judge Crane's testimony was actually needed. "Absent a compelling reason to call the judge as a witness at the post-conviction hearing, the judge is not disqualified from ruling on the motion for post-conviction relief." *Wright-El v. State*, 890 S.W.2d 664, 672 (Mo. App. 1994). Forcing the judge's recusal by endorsing the judge as a witness frustrates an important purpose of the post-conviction rules, namely, "avoiding delay in the processing of prisoner's claims and preventing litigation of stale claims." *Id*. Where it is not alleged and does not appear from the record that the judge has any special knowledge or involvement regarding the case other than that derived from presiding over the underlying criminal trial, the judge should not be disqualified. *Logan v. State*, 712 S.W.2d 9, 11 (Mo. App. 1986). Because a court may judicially notice its own prior records, the judge is not needed as a witness for the purpose of testifying regarding the events at trial. *Id*.
>
> Gunn has not demonstrated that Judge Crane would testify as to anything outside of the court's own prior records. Gunn's allegations in his amended motion that Judge Crane was aware of or involved in the prosecutorial misconduct were not supported by any facts and were merely conclusory. Moreover, Gunn had the opportunity to testify during the evidentiary hearing as to any facts that formed the basis for his belief that Judge Crane was a material witness, but he failed to do so. Instead, Gunn offered more conclusory allegations that Judge Crane knew about the alleged prosecutorial misconduct. Neither Gunn's amended motion nor his hearing evidence contained facts to support his contention that Judge Crane was a material witness and, therefore, subject to disqualification. . . .

Doc. 10-10 at 8-9.

A review of the record and argument indicates no error. Therefore, because the state court's determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § § 2254(d)(1) and (2), Ground 3 is denied.

*Ground 4: Closing Arguments*

In his fourth ground, Petitioner argues that the trial court plainly erred in failing to intervene in the state's closing arguments when the state argued that there were no inconsistencies/inconsistent statements in the videotaped interviews of two witnesses. As noted above, a "habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan*, 54 F.3d at 1381. Here, this claim was reviewed for plain error on direct appeal. Doc. 10-5 at 5-6. Nevertheless, a state court's discretionary review for plain error does not excuse the procedural default of an unpreserved claim. *Clark v. Bertsch*, 780 F.3d 873, 875-77 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)). As the Petitioner has failed to demonstrate cause for his default and fundamental miscarriage of justice, the Court declines to consider the merits of his defaulted claim. *Coleman*, 501 U.S. at 750.

*Ground 5: Actual Innocence*

As to Petitioner's claim of actual innocence in Ground 5, the question is whether Petitioner sufficiently pleads a freestanding claim or a gateway claim to establish cause and prejudice for his procedural default. To claim that his procedural default resulted in a fundamental miscarriage of justice, a petitioner must present new evidence that affirmatively demonstrates he is innocent of the crime for which he was convicted. *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006), *cert. denied*, 549 U.S. 1036 (2006). Claims of actual innocence require habeas petitioners to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Evidence is new only if it was unknown to the petitioner at the time of trial, due diligence would not have uncovered the evidence, the

9

evidence is material, and the emergence of the new evidence would probably have led to an acquittal. *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007). Specifically, the petitioner must demonstrate that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 538 (2006).

In a recent decision regarding a freestanding claim of actual innocence, the United States Court of Appeals for the Eighth Circuit summarized:

> The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House v. Bell*, 547 U.S. [at] 554-55[ ]. The Court has established, however, that the threshold for any such [freestanding] claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House*, 547 U.S. at 555; *see Schlup v. Delo*, 513 U.S. 298, 315 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The "extraordinarily high" threshold, if recognized, would be even higher. *House*, 547 F. 3d at 555."

*Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014).

In contrast to a freestanding claim of actual innocence, a gateway claim of actual innocence requires that the petitioner allege both: (1) newly discovered evidence establishing the offender's innocence; and (2) an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera*, 506 U.S. at 400; *see also Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citing *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the

10

question whether their constitutional rights have been preserved.")). As to a claim of actual innocence under *Schlup*, it is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup,* 513 at 315. However, the Supreme Court cautioned in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), that "tenable actual-innocence gateway claims are rare."

In this case, Petitioner does not specify whether he is raising a freestanding or a gateway claim of actual innocence. Petitioner states that his claim of actual innocence is based on a reiteration of his claim in Ground 1: The prosecutor coached state witnesses to give false testimony at trial. Doc. 1 at 10. The only evidence proffered by Petitioner in support of his claim of actual innocence are the alleged recantations[2] of state witnesses Kyle Gunn, Petitioner's son,[3] and Zach Davis, who is related to Petitioner through marriage.[4] Doc. 1 at 6.

When reviewing a claim of innocence based on new evidence, "*Schlup* makes plain that the habeas court must consider all the evidence, old and new, incriminating and exculpatory," to determine "how reasonable jurors would react to the overall, newly supplemented record." *House*, 547 U.S. at 538 (internal quotations and citations omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* This analysis includes credibility determinations. *See id.* at 538-39.

---

[2] The Court notes, however, that Zach Davis' alleged "recantation" does not appear to be a recantation. To "recant" means to "withdraw or renounce prior statements or testimony formally or publicly." *Black's Law Dictionary* (10th ed. 2014). The "recantation" from Zach Davis that petitioner proffers is a letter that Zach Davis wrote to the prosecutor *prior* to giving his testimony at trial – not a renunciation of his trial testimony after the fact. *See* Doc. 39-1 at 12-13. Further, the letter indicates that Zach Davis merely had an issue remembering the particulars of the crime – not that petitioner was innocent. *See id.* Notwithstanding, the Court refers to Zach Davis' statement as a "recantation" *arguendo*.
[3] Doc. 10-1 at 47.
[4] Doc. 10-1 at 69.

As an initial matter, Petitioner does not proffer evidence that all of the State's witnesses recanted. At trial, three of Petitioner's family members testified and implicated Petitioner in a series of robberies. *See* Doc. 10-5 at 5-6. Petitioner presented evidence that two of those witnesses, Kyle and Davis, recanted their incriminating testimony. Doc. 39 at 12-16. However, Stacey Moorehead, Petitioner's niece, also testified that she overheard Petitioner plan and encourage the series of robberies. *See* Doc. 10-5 at 6. Thus, only two of the three witnesses that implicated Petitioner allegedly have recanted their testimony.

Moreover, the alleged witness recantations proffered by Petitioner would likely have a minimal impact on reasonable jurors. Witness recantations are not strong evidence of a petitioner's innocence because recantations are "latter-day impeachment evidence" meant merely to "undermine the credibility" of state witnesses that "will seldom, if ever, make a clear and convincing case" that a petitioner is actually innocent. *Dansby*, 766 F.3d at 817 (internal quotations and citations omitted). The Court "look[s] upon recantation[s] with suspicion." *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001). Indeed, the particular witness recantations that Petitioner relies on lack credibility. At trial, Stacey Moorehead's incriminating testimony corroborated Kyle's and Davis' original, incriminating testimony, in that all three testified that Petitioner planned and encouraged the robberies. *See* Doc. 10-5 at 5-6. Thus, Stacey Moorehead's testimony bolsters Kyle Gunn's and Zach Davis' incriminating testimony. Her testimony likewise diminishes the credibility of their alleged exculpatory recantations, which the Court already views with suspicion. *See Dogskin*, 265 F.3d at 685. Therefore, the alleged witness recantations would likely have a minimal impact on a reasonable juror.

Because the recantations would likely have a minimal impact on a reasonable juror, the witness recantations do not establish that "more likely than not that no reasonable juror would

12

have found petitioner guilty beyond a reasonable doubt," as required under the lesser, gateway claim of actual innocence standard. *Dansby*, 766 F.3d at 816. Consequently, under either the freestanding claim of actual innocence or the gateway claim of actual innocence standard, Petitioner fails to establish his innocence, and Ground 5 is denied.

*Ground 6: Dozens of Pro Se Claims*

In his sixth ground, Petitioner argues that "[t]he petitioner on receiving a hearing on the state interference seeks to amend the petition to include dozens of pro se claims that could have been raised . . . ." Doc. 1 at 10. Petitioner fails to allege the legal or factual basis for any of the claims. *See id.* Regardless, Petitioner reiterates that Grounds 1 through 5 are the "state interference" that prevented him from raising such claims. *See id.* Thus, it appears that Petitioner contends that, once he proves Grounds 1 through 5, the Court should entertain additional grounds for relief. *See id.* However, the Court denies Grounds 1 through 5. Consequently, Ground 6 is denied.

**Conclusion and Certificate of Appealability**

For the reasons set forth above, Petitioner's petition for relief under 28 U.S.C. § 2254 is DENIED.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, Petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability is DENIED.

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed.

**IT IS SO ORDERED.**

<u>s/ Fernando J. Gaitan</u>
FERNANDO J. GAITAN, JUDGE
UNITED STATES DISTRICT COURT

DATED: <u>November 15, 2016</u>